**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TELEFÓNICA, S.A.,<br><br>*Petitioner,*<br><br>v.<br><br>REPUBLIC OF COLOMBIA,<br><br>*Respondent.* | Civil Action No. 1:26-cv-01930 (JDB)<br><br>ORAL ARGUMENT REQUESTED |

**RESPONDENT THE REPUBLIC OF COLOMBIA'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS**

Pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure, Respondent the Republic of Colombia ("the Republic" or "Colombia") moves to dismiss the Petition to Recognize and Enforce a Foreign Arbitral Award (the "Petition") filed by Telefónica, S.A. ("Petitioner"), for lack of personal and subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq*. In the alternative, the Republic requests an order staying these proceedings, pursuant to the Court's inherent authority, pending the outcome of the annulment proceeding in *Telefónica, S.A. v. Republic of Colombia*, ICSID Case No. ARB/18/3, before the *ad hoc* Annulment Committee constituted under Article 52 of the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States ("ICSID Convention").

Service of the Petition and Summons on the Republic was completed on July 9, 2026, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents and 28 U.S.C. § 1608(a)(2). *See* Return of Service/Affidavit of Summons and Complaint (August

21, 2026). This Motion is timely filed within the sixty (60) days provided under 28 U.S.C. § 1608(d).

Pursuant to Local Civil Rule 7(f), the Republic respectfully requests that the Court schedule an oral hearing on its motion.

Pursuant to Local Civil Rule 7(m), counsel for the Republic has conferred with counsel for Petitioner with respect to the alternative request for a stay, and has confirmed that Plaintiff opposes this motion.

This motion is based upon the accompanying Memorandum of Points and Authorities in Support of the Republic of Colombia's Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Stay Proceedings, and Declaration of David M. Bigge and exhibits filed concurrently herewith.

Dated: September 8, 2026

Respectfully submitted,

WORDSTONE DISPUTE RESOLUTION US LLP

By: /s/ David M. Bigge

David M. Bigge
D.C. Bar No. 994194
1320 19th Street, NW
Suite 600
Washington, D.C. 20036
Tel.: +1 202 902 1801
Email: David.Bigge@wordstone.com

*Attorneys for Respondent*
*The Republic of Colombia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic copy to counsel of record.

/s/ David M. Bigge
By: David M. Bigge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TELEFÓNICA, S.A.,<br><br>*Petitioner,*<br><br>v.<br><br>REPUBLIC OF COLOMBIA,<br><br>*Respondent.* | Civil Action No. 1:26-cv-01930 (JDB)<br><br>ORAL ARGUMENT REQUESTED |

**RESPONDENT THE REPUBLIC OF COLOMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS**

WORDSTONE DISPUTE RESOLUTION US LLP
David M. Bigge
D.C. Bar No. 994194
1320 19th Street, NW
Suite 600
Washington, D.C. 20036
Tel.: +1 202 902 1801
Email: David.Bigge@wordstone.com

*Attorneys for Respondent*
*The Republic of Colombia*

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**STATEMENT OF MATERIAL FACTS** .......... **2**

A. There Were Two Arbitration Clauses, Only One of Which Was Applicable to This Dispute. .......... 2

1. The Concession Agreements Governed the Relationship between MinTIC and ColTel. .......... 2

2. The Treaty Did Not Cover Contract Disputes. .......... 4

B. Colombia Appropriately Invoked the Contractual Arbitration Clause to Resolve the Dispute Between the Parties. .......... 4

C. Petitioner Inappropriately Pursued ICSID Arbitration, Over Colombia's Jurisdictional Objections. .......... 6

D. Colombia Filed for the Award to be Annulled Because, Inter Alia, the Tribunal Lacked Jurisdiction Ab Initio, and Failed to Consider Colombia's Other Defenses. .......... 8

**ARGUMENT** .......... **10**

A. Legal Standards .......... 10

B. There is No Jurisdiction Over the Republic under the FSIA. .......... 12

1. Colombia Did Not Agree to Arbitrate This Dispute at ICSID, and Thus the Arbitration Exception to Sovereign Immunity is Not Triggered. .......... 12

2. The NextEra Decision is Distinguishable and "Incorrect". .......... 14

3. The Republic Did Not Impliedly Waive Its Sovereign Immunity. .......... 16

C. In the Alternative, This Action Should Be Stayed Pending Conclusion of the ICSID Annulment Proceeding. .......... 17

**PRESERVED BASES FOR DISMISSAL** .......... **20**

**CONCLUSION** .......... **20**

# TABLE OF AUTHORITIES

***SUPREME COURT CASES***

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ........ 11

*BG Group plc v. Republic of Argentina*,
572 U.S. 25 (2014) ........ 11, 15

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017) ........ 12

*Granite Rock Co. v. International Brotherhood of Teamsters*,
561 U.S. 287 (2010) ........ 11

*Landis v. North American Co.*,
299 U.S. 248 (1936) ........ 18

*Medellín v. Texas*,
552 U.S. 491 (2008) ........ 15

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993) ........ 10

*Verlinden B.V. v. Central Bank of Nigeria*,
461 U.S. 480 (1983) ........ 12

***OTHER FEDERAL COURT CASES***

*Agudas Chasidei Chabad v. Russian Federation*,
528 F.3d 934 (D.C. Cir. 2008) ........ 11

*CEF Energia, B.V. v. Italian Republic, No. 19-cv-3443 (KBJ)*,
2020 WL 4219786 (D.D.C. July 23, 2020) ........ 19

*Chevron Corp. v. Republic of Ecuador*,
795 F.3d 200 (D.C. Cir. 2015) ........ 12

*Creighton Ltd. v. Qatar*,
181 F.3d 118 (D.C. Cir. 1999) ........ 16

*InfraRed Environmental v. Kingdom of Spain, No. 20-817 (JDB),*
2021 WL 2665406 (D.D.C. June 29, 2021) ........ 17, 18

*Khochinsky v. Republic of Poland*,
1 F.4th 1 (D.C. Cir. 2021) ... 16

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017) ... 11

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024) ... 1, 14, 16, 17

*Phoenix Consulting Inc. v. Republic of Angola*,
216 F.3d 36 (D.C. Cir. 2000) ... 10

*TIG Insurance Company v. Republic of Argentina*,
110 F.4th 221 (D.C. Cir. 2024) ... 16

*Vallejo Entertainment LLC v. Small Business Administration, No. 1:22-cv-01548 (RCL)*,
2023 WL 3275634 (D.D.C. May 5, 2023) ... 18

***FEDERAL STATUTES***

22 U.S.C. § 1650a ... 11

28 U.S.C. § 1330 ... 1, 10, 20

28 U.S.C. § 1602 ... 1, 10, 20

28 U.S.C. § 1605 ... 1, 11, 12, 13, 16

28 U.S.C. § 1608 ... 10

***FEDERAL RULES***

Fed. R. Civ. P. 12(b)(1) ... 10

Fed. R. Civ. P. 12(b)(2) ... 10

Fed. R. Civ. P. 12(b)(6) ... 20

***ICSID CASES***

*Telefónica, S.A. v. Republic of Colombia*,
ICSID Case No. ARB/18/3 ... 1, 7, 20

*Joy Mining Machinery Ltd. v. Arab Republic of Egypt*,
ICSID Case No. ARB/03/11 ... 13

*El Paso Energy International Co. v. Argentine Republic*,
ICSID Case No. ARB/03/15 ........................................ 13

*Société Générale de Surveillance S.A. v. Republic of the Philippines*,
ICSID Case No. ARB/02/6 ........................................ 14

## GLOSSARY OF TERMS AND ACRONYMS

| **Term/Acronym** | **Definition** |
|---|---|
| América Móvil | América Móvil S.A.B. de C.V., the Mexican parent company of Comcel |
| Award | Arbitral Award, *Telefónica S.A. v. Republic of Colombia*, ICSID Case No. 18/3 (Nov. 12, 2024) |
| Bigge Decl. | Declaration of David M. Bigge, dated September 8, 2026, provided with this Memorandum |
| BIT | The Agreement Between the Kingdom of Spain and the Republic of Colombia for the Promotion and Reciprocal Protection of Investments, *signed* March 31, 2005; *entered into force* September 22, 2007 |
| Colombia | Respondent the Republic of Colombia |
| ColTel | Colombia Telecommunications S.A. E.S.P. |
| Comcel | Comunicación Celular S.A. |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* |
| ICSID | International Centre for the Settlement of Investment Disputes |
| ICSID Convention | The Convention on the Settlement of Investment Disputes between States and Nationals of Other States, *opened for signature* March 18, 1965, *entered into force* October 14, 1966, 575 U.N.T.S. 159 |
| Kownacki Decl. | Declaration of Nicolle Kownacki, dated June 2, 2026, provided with the Petition |
| MinTIC | Colombian Ministry of Information Technology and Communications |
| Operators | Collectively, ColTel and Comcel |
| Petition | The Petition to Recognize and Enforce a Foreign Arbitral Award, dated June 2, 2026 |
| Petitioner | Petitioner Telefónica, S.A. |
| Republic | Respondent the Republic of Colombia |

| | |
|---|---|
| Treaty | The Agreement Between the Kingdom of Spain and the Republic of Colombia for the Promotion and Reciprocal Protection of Investments, *signed* March 31, 2005; *entered into force* September 22, 2007 |

The Republic of Colombia ("the Republic" or "Colombia") moves this Court (1) to dismiss the Petition to Recognize and Enforce a Foreign Arbitral Award (June 2, 2026) ("Petition"), filed by Telefónica, S.A. ("Petitioner"), for lack of personal and subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*, or (2) in the alternative, for a stay of this action pending the outcome of the annulment proceeding in *Telefónica, S.A. v. Republic of Colombia*, ICSID Case No. ARB/18/3. The Republic respectfully submits this Memorandum of Points and Authorities in support of its motion.

**INTRODUCTION**

The Republic enjoys immunity from the Court's jurisdiction under federal and international law, subject in the United States to the limited exceptions to immunity detailed in the FSIA. Petitioner alleges that two such exceptions are relevant in this case: the agreement to arbitrate exception, 28 U.S.C. § 1605(a)(6), and the implied-waiver exception, 28 U.S.C. § 1605(a)(1). Neither exception applies here.

To invoke the agreement to arbitrate exception in this case, Petitioner must demonstrate, and this Court must independently find, three "jurisdictional facts": (1) a valid agreement to arbitrate; (2) an award rendered pursuant to that agreement; and (3) a treaty in force potentially governing award enforcement. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024). Here, the Petition falls at the first hurdle, because the Republic did not agree, through an investment treaty it signed with the Kingdom of Spain, to arbitrate a breach of contract dispute with Petitioner at the International Centre for the Settlement of Investment Disputes ("ICSID").

The Petition's reliance on implied waiver similarly fails. In this Circuit, there are only three bases for finding an implied waiver, none of which apply here – and Petitioner has not alleged otherwise. Petitioner instead asserts that the alleged agreement to arbitrate by itself constituted an implied waiver. This argument is therefore fully redundant with its "agreement to arbitrate" arguments and fails for the same reasons.

Finally, an application to annul the very Award that Petitioner seeks to enforce remains pending before an ICSID *ad hoc* Annulment Committee. In the annulment proceedings, the Republic has established *inter alia* that there was no jurisdiction in the underlying arbitration. If the annulment application is granted on that or any other basis – which the Republic fully anticipates – that decision will dispose of the matter entirely. For this reason, the Republic requests in the alternative that the Court exercise its inherent power to stay proceedings pending the outcome of the ICSID annulment process.

## STATEMENT OF MATERIAL FACTS

### A. There Were Two Arbitration Clauses, Only One of Which Was Applicable to This Dispute.

#### 1. The Concession Agreements Governed the Relationship between MinTIC and ColTel.

On March 28, 1994, the Colombian Ministry of Communications, now called the Ministry of Information Technology and Communications ("MinTIC"), entered into Concession Agreements Nos. 001, 002, and 003 for the provision of mobile cellular telephone services with concessionaires whose rights and obligations were subsequently assumed, through successive corporate reorganizations, by Colombia Telecomunicaciones S.A. E.S.P. ("ColTel"). *See* Memorial on Annulment (August 6, 2025), Declaration of David M. Bigge ("Bigge Decl."), Ex. 1, ¶ 20. In 2004, ten years after the Concession Agreements were first signed, Petitioner

Telefónica S.A. acquired a 67.5% interest in ColTel through its purchase of BellSouth Colombia S.A. Memorial on Annulment, Bigge Decl. Ex. 1, ¶ 25; *accord* Petition ¶ 12.

The day after the ColTel Concession Agreements were initially signed, March 29, 1994, MinTIC entered into Concession Agreements Nos. 004, 005 and 006 with Comunicación Celular S.A. ("Comcel"). Comcel was a Colombian company that would later come to be owned by the Mexican company América Móvil S.A.B. de C.V. ("América Móvil"). The text of Concession Agreements Nos. 004, 005, and 006 are substantively identical to the Concession Agreements with ColTel. *See* Memorial on Annulment, Bigge Decl. Ex. 1, ¶ 21. This Memorandum refers to ColTel and Comcel collectively as the "Operators."

Clause 33 of the Concession Agreements established a "reversion obligation," providing that all concession assets provided to the Operators would revert to the State upon the expiration of the Concession Agreements. Specifically, the Operators agreed that:

> Upon expiration of concession term, the elements and assets directly related to the concession shall become the property of the Nation – MINISTRY OF COMMUNICATIONS, without the Ministry being required to pay any compensation therefor.

Concession Agreement No. 001, Bigge Decl. Ex. 2, Clause 33.[1]

Clause 43 of the Concession Agreements provided exclusively for domestic commercial arbitration to hear disputes arising under the Concession Agreements:

> Any disputes relating to the execution, performance, implementation, termination, or settlement of this contract that cannot be resolved directly by the parties shall be submitted to an arbitral tribunal for resolution. The tribunal shall consist of three members, and its award shall be in accordance with the law; the manner of its appointment and its operation shall be subject to the applicable legal provisions.

*Id.* Clause 43.

[1] Concession Agreements No. 001, 002, 003, 004, 005, and 006 were identical with respect to clauses 33 and 43. For efficiency, only Concession Agreement No. 001 is being provided as an exhibit to the Bigge Declaration.

**2. The Treaty Did Not Cover Contract Disputes.**

Separately, the Republic of Colombia and the Kingdom of Spain signed a bilateral investment treaty, the Agreement Between the Kingdom of Spain and the Republic of Colombia for the Promotion and Reciprocal Protection of Investments, *signed* March 31, 2005, *entered into force* September 22, 2007 (the "BIT" or "Treaty"). The Treaty provided certain substantive protections for investors from one country investing in the other country. Article 10 of the BIT provides a mechanism for investor-State dispute resolution, including a binding offer from both States to arbitrate disputes with the other States' investors that was limited to "matters governed by th[e] Agreement." *See* BIT, Declaration of Nicolle Kownacki ("Kownacki Decl."), Ex. 2, arts. 10(2), 10(6). Unlike other investment treaties that address contract disputes between the investor and the State, neither the substantive protections in the BIT nor the offer to arbitrate covered contract disputes or suggested that the offer to arbitrate in the BIT overrode the exclusive arbitration clause in the Concession Agreements between MinTIC and ColTel.

**B. Colombia Appropriately Invoked the Contractual Arbitration Clause to Resolve the Dispute Between the Parties.**

In 1998, Colombia's Congress passed Law 422, which read that "[i]n telecommunications service concession contracts, reversion shall only entail the return to the State of the radio-frequency assigned for the provision of the concessioned service." Law 422 of 1998, Bigge Decl. Ex. 3, art. 4. Critically, however, this statute made clear that the law would be effective only from "the date of its enactment" and did not provide for retrospective effect. *Id.* art. 8 (emphasis added). In 2009, through Law 1341, the Colombian Congress reaffirmed Law 422. Memorial on Annulment, Bigge Decl. Ex. 1, ¶ 26.

Furthermore, although MinTIC and the Operators agreed to amend various clauses of the Concession Agreements after 1998, Clause 33 on reversion was left untouched. Memorial on

Annulment, Bigge Decl. Ex. 1, ¶ 27, n. 11. In fact, every amendment expressly confirmed that all contractual obligations not being expressly modified remained in full force.

In 2012, Laws 422 and 1341 were challenged before Colombia's Constitutional Court. On August 22, 2013, the Colombian Constitutional Court rejected the challenge and held that Laws 422 and 1341 were constitutional, "on the understanding that concession contracts entered into before these laws took effect must respect the content of the reversion clauses agreed upon therein." Judgment C-555 (August 22, 2013), Bigge Decl. Ex. 4, p. 77 (excerpted). This result was consistent with Law 422's language regarding its effectiveness. Thus, for the Concession Agreements ColTel signed in 1994, the original contract terms governed.

In November 2013, both ColTel and Comcel opted to terminate the Concession Agreements. However, both companies refused to return all of the concession assets to MinTIC, as required by Clause 33. Instead, they limited their reversion to just the frequencies addressed in Laws 422 and 1341. This decision kicked off a lengthy negotiation period between MinTIC and the Operators, between 2014 and 2016.

In February 2016, having failed to negotiate a solution to the early termination and the Operators' refusal to abide by Clause 33 of the Concession Agreements, MinTIC was forced to initiate domestic commercial arbitration proceedings against both ColTel and Comcel pursuant to Clause 43 of the Concession Agreements. Memorial on Annulment, Bigge Decl. Ex. 1, ¶ 31. Both Operators fully participated in these proceedings. On July 25, 2017, the domestic arbitral tribunal issued its award, finding *inter alia* that:

- Clause 33 remained valid during the entirety of the Concession Agreements' performance;

- The reversion obligation in Clause 33 was enforceable by virtue of the agreement of the contractual parties;
- There was no "confusion" regarding the meaning of Clause 33;
- The enactment of Laws 422 and 1341 did not impact Clause 33, as those laws did not apply retroactively and no amendment to the Concession Agreements was made to reflect those laws;
- There was no understanding or conduct of the contractual parties that suggested that they agreed to amend Clause 33; and
- In light of those findings, both Operators were obligated to revert all concession assets to the State. Consequently, the tribunal ordered the Operators to pay the value of the concession assets to MinTIC.

Arbitral Award (July 26, 2017), Bigge Decl. Ex. 5 (excerpted).

In compliance with the arbitral award, ColTel paid the value of the assets that it was supposed to return, or COL $1,651,012,000,000 (approximately US$547 million). On August 29, 2017, Petitioner capitalized ColTel to fund its 67.5% share of that payment, or US$379,804,275.55. *Accord* Petition ¶¶ 16-17.

### C. Petitioner Inappropriately Pursued ICSID Arbitration, Over Colombia's Jurisdictional Objections.

On February 1, 2018, Petitioner filed a Request for Arbitration with ICSID, alleging that – despite the clear language of Clause 33, the exclusive arbitral remedy in the Concession Agreements, and the domestic arbitral award affirming that all concession assets were supposed to revert to the State – MinTIC had violated the BIT. ICSID registered the Request on February 20, 2018, and the Tribunal was constituted on February 26, 2019. *Accord* Petition ¶ 19.

Colombia timely raised four preliminary objections. As relevant to these enforcement proceedings, Colombia argued that the dispute concerned the interpretation and performance of Clause 33 of the Concession Agreements under Colombian law, that MinTIC acted as an ordinary contracting party in this context, and that the domestic award confirmed this characterization. Thus, this was not a dispute "regarding matters governed by" the BIT, to which the Republic had consented to arbitrate, but was rather a contract dispute that fell outside the four corners of the BIT. *Accord* Petition ¶ 22.

The ICSID tribunal, by an order dated January 24, 2020, denied Colombia's request that its preliminary objections be resolved through a separate bifurcated process. Arbitral Award, *Telefónica S.A. v. Republic of Colombia*, ICSID Case No. 18/3 (Nov. 12, 2024), Kownacki Ex. 1 ("Award"), ¶ 26. In so deciding, the Tribunal determined that it would rule on Colombia's jurisdictional objections alongside the merits of the dispute. After extensive briefing, a virtual hearing was held on both the Republic's jurisdictional objections and the merits between April 19 and April 25, 2021. Closing arguments were held on July 27, 2021. *Id.* ¶¶ 35, 39.

It took the Tribunal more than three years after closing arguments to issue a decision. On November 12, 2024, the ICSID Tribunal issued its Award, belatedly and errantly finding that it had jurisdiction and that Colombia violated Article 2(3) of the BIT by frustrating Petitioner's "legitimate expectations" regarding the scope of asset reversion. *Id.* The Tribunal awarded Petitioner US$379,804,275.55 in principal damages (the exact amount Petitioner had provided to ColTel as its portion of the amount owed under the domestic arbitral award), plus 5% annual compound interest from August 29, 2017, €4,300,824.32 in costs, and 4.25% annual compound interest on costs from the Award date. *Id.*

The ICSID Tribunal's decision with respect to Petitioner was in sharp contrast to the decision made by a different ICSID tribunal with respect to the other Operator, Comcel, and its Mexican parent company, América Móvil. In a 2021 award under the Mexico-Colombia investment treaty, the tribunal dismissed the investor's claim, stressing that the domestic commercial award had been rendered within the domestic tribunal's jurisdiction and was final as a matter of Colombian law. The Award that Petitioner seeks to enforce in this proceeding fails to even discuss the earlier award with respect to Councel, never mind justify the discrepancy between the two tribunals' decisions. *See, e.g.,* Memorial on Annulment, Bigge Decl. Ex. 1 ¶¶ 15, 17, 195.

**D. Colombia Filed for the Award to be Annulled Because, *Inter Alia*, the Tribunal Lacked Jurisdiction *Ab Initio*, and Failed to Consider Colombia's Other Defenses.**

Under Article 52 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, *opened for signature* March 18, 1965, *entered into force* October 14, 1966, 575 U.N.T.S. 159 ("ICSID Convention"), a party to an ICSID arbitration can request that the arbitral award be annulled for a variety of reasons, including that the arbitral tribunal manifestly exceeded its powers by finding jurisdiction where it had none. *See* ICSID Convention art. 52, Kownacki Decl. Ex. 3. On November 27, 2024, the Republic filed its application for annulment of the Award at issue in this case. *Accord* Petition ¶ 26. On December 6, 2024, ICSID registered the application, and enforcement of the Award was thereupon provisionally stayed by operation of Article 52(5) of the ICSID Convention and ICSID Arbitration Rule 54(2).

The gravamen of the Republic's argument on annulment is that the Tribunal assumed jurisdiction over a contractual dispute that was manifestly outside its jurisdiction. The Tribunal further disregarded the international and Colombian law applicable to that dispute and, instead,

decided *ex aequo et bono*, without the Parties' consent (as required by the ICSID Convention art. 42(3)). As such, the Tribunal ignored Colombia's legal defenses and never stated the factual and legal premises underpinning its decisions on jurisdiction, liability, and damages. The Tribunal did not address the contrary ICSID decision, reached three years prior regarding precisely the same facts, in *América Móvil*. The Tribunal further ordered Colombia to pay over $300 million in damages for the conduct of a domestic commercial tribunal, ignoring Colombia's causation defense with respect to damage. *See generally,* Memorial on Annulment, Bigge Decl. Ex. 1.

An *ad hoc* Annulment Committee was constituted on March 14, 2025, to hear these and other bases for annulment raised in the Colombia's application. Colombia thereafter requested that enforcement of the Award be stayed for the entire pendency of the annulment proceedings. On January 9, 2026, the Annulment Committee granted Colombia's request to maintain the stay. The Committee conditioned the stay, however, on Colombia posting an irrevocable bank guarantee for US$379,804,275.55 plus €4,300,824.32, by February 9, 2026. Decision of the *Ad Hoc* Committee (Jan. 9, 2026), Kownacki Decl. Ex. 4. Colombia was unable to post the guarantee within the deadline. Under Colombian law (Decree 1068 of 2015, art. 2.2.1.2.1.2, as amended by Decree 1575 of 2022), such a guarantee could only be issued through a long-term public credit transaction requiring sequential approval by the National Council for Economic and Social Policy (CONPES) and the Interparliamentary Commission on Public Credit, a process that could not be completed in less than six months.

Colombia brought these constraints to the attention of the Annulment Committee in a February 19, 2026 request for reconsideration. On March 5, 2026, the Committee rejected Colombia's request for reconsideration but granted an additional 30 days for Colombia to provide the requested bank guarantee. Decision of the *Ad Hoc* Committee (March 5, 2026),

Kownacki Decl. Ex. 5. Colombia again was unable to post the guarantee within the extended period, and on April 4, 2026, the stay lifted automatically. The Republic's April 6, 2026 request for further reconsideration was denied on April 8, 2026. *See* Kownacki Decl. Exs. 6, 7.

Crucially, the stay lifted solely because the Republic could not legally satisfy the bank-guarantee condition, not because the Committee found Colombia's annulment application meritless or dilatory. The condition the Committee imposed governs the Republic's obligations within the ICSID system under Articles 53 and 54 of the ICSID Convention; it neither addresses nor constrains this Court's inherent authority to manage its own docket.

The Republic has pursued its annulment application diligently. A hearing on the Republic's application was heard on June 3 and 4, 2026, and post-hearing briefs were filed on August 4, 2026. The Republic's annulment application remains pending and undecided.

## ARGUMENT

### A. Legal Standards

A motion to dismiss for lack of personal and subject matter jurisdiction is governed by Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. To rule on such a motion, the Court must look beyond the pleadings and resolve the jurisdictional facts for itself. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000). Personal jurisdiction over a foreign state is derivative: under 28 U.S.C. § 1330(b), it exists only where subject matter jurisdiction exists under 28 U.S.C. § 1330(a) and the exceptions detailed in 28 U.S.C. § 1602 *et seq.,* and service has been made in conformity with 28 U.S.C. § 1608. Because no exception to immunity applies, this Court has neither subject matter jurisdiction nor, through Section 1330(b), personal jurisdiction.

A foreign state is presumptively immune, and thus the FSIA's exceptions are the only basis for personal and subject matter jurisdiction in this case. *Saudi Arabia v. Nelson*, 507 U.S.

349, 355 (1993); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (the FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in our courts"). While U.S. law implements Article 54 of the ICSID Convention by requiring that ICSID awards be accorded "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States" (22 U.S.C. § 1650a), that provision does not establish jurisdiction over a foreign sovereign independent of the FSIA. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117 (2d Cir. 2017). Rather, a petitioner seeking to enforce an ICSID award against a foreign state must still satisfy one of the FSIA's jurisdictional exceptions. The petitioner bears the burden of production as to the facts said to bring the case within an exception; once that burden is met, the foreign state bears the burden of persuasion and must establish the absence of the jurisdictional fact by a preponderance of the evidence. *See Agudas Chasidei Chabad v. Russian Federation*, 528 F.3d 934, 940 (D.C. Cir. 2008).

Where a claim to jurisdiction over a foreign sovereign is based on the FSIA's agreement to arbitrate exception, 28 U.S.C. § 1605(a)(6), the Court must determine for itself whether there was an agreement to arbitrate, regardless of how the arbitral tribunal resolved the same question. In *BG Group plc v. Republic of Argentina*, 572 U.S. 25, 34 (2014), the Supreme Court confirmed that U.S. courts "presume" that courts decide "disputes about 'arbitrability'," including "whether an arbitration clause . . . applies to a particular type of controversy" – the very issue presented in this case (as opposed to "procedural preconditions for the use of arbitration," which the Supreme Court held are presumptively decided by arbitrators). In *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 298–299 (2010), the Court likewise affirmed that

courts, not arbitrators, presumably resolve questions of the "formation of the parties' arbitration agreement" and "its enforceability or applicability to the dispute."

The Court's role in determining arbitrability is critical when the defendant is a foreign sovereign. Because a foreign state's amenability to suit implicates sensitive questions of foreign policy, comity, and sovereignty, the Supreme Court has repeatedly instructed that "[a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the [FSIA] exceptions applies." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493–494 (1983); *cf. id.* at 493 n.20 ("even if the foreign state does not . . . assert an immunity defense, a District Court still must determine that immunity is unavailable under the Act."); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,* 581 U.S. 170, 176–77, 187 (2017) (holding that sovereign immunity is a threshold issue to be resolved independently of, and prior to, assessment on the merits).

## B. There is No Jurisdiction Over the Republic under the FSIA.

### 1. Colombia Did Not Agree to Arbitrate This Dispute at ICSID, and Thus the Arbitration Exception to Sovereign Immunity is Not Triggered.

The FSIA provides that a foreign state may not be immune from suit in the United States where an action is brought to confirm an arbitral award, but only if the award arose from the foreign state's ***agreement*** to arbitrate, and only where that award is subject to a treaty requiring the United States to recognize and enforce it. 28 U.S.C. § 1605(a)(6). The court must satisfy itself that these "jurisdictional facts" are met as a matter of fact and law, and not merely that a colorable argument for jurisdiction exists; a "non-frivolous" claim of an arbitration agreement is insufficient. *See Chevron v. Ecuador*, 795 F.3d 200, 204–05 & n.3 (D.C. Cir. 2015) (rejecting the plaintiff's proposed "non-frivolous" standard).

Here, Article 10(6) of the BIT provides Colombia's "advance and irrevocable consent" to arbitrate "disputes regarding matters governed by th[e] Agreement." This was an ***offer*** to arbitrate only those disputes that fell within the scope of the BIT; it was not an agreement to arbitrate any and all disputes with Petitioner. The critical question, which this Court must decide for itself, is whether the dispute Petitioner submitted to ICSID arbitration constitutes a "dispute[] regarding matters governed by" the BIT, and thus fell within Colombia's offer to arbitrate. Only if the matter fell within the offer to arbitrate was an "agreement" to arbitrate actually formed by Petitioner's acceptance of that offer, and the exception to sovereign immunity in Section 1605(a)(6) implicated.

Petitioner's substantive claim arises from the interpretation and application of the reversion obligation in Clause 33 of the Concession Agreements under Colombian law; indeed the original domestic arbitration, and the subsequent ICSID arbitration, arrived at essentially the same damages figure, that being the amount owed to the Republic under Clause 33. A dispute that sounds in contract, even a contract involving a State party, is not generally governed by an investment treaty. *See, e.g., Joy Mining Machinery Ltd. v. Arab Republic of* Egypt, ICSID Case No. ARB/03/11, Award on Jurisdiction (6 August 2004), Bigge Decl. Ex. 6, ¶¶ 75-79 ("… the fact that a State agency might be a party to the Contract involving a commercial transaction of this kind does not change its nature. It is still a commercial and contractual dispute to be settled as agreed to in the Contract, including the resort to arbitration if and when available. It is not transformed into an investment or an investment dispute."); *El Paso Energy International Co. v. Argentine Republic*, ICSID Case No. ARB/03/15, Decision on Jurisdiction (27 April 2006), Bigge Decl. Ex. 7, ¶ 84 (finding that an investment treaty "does not extend [an ICSID Tribunal's] jurisdiction over any contract claims that the Claimants might present stemming

solely from the breach of a contract between the investor and the Argentine State or an Argentine autonomous State entity").

In addition, Clause 43 of the Concession Agreements provides the ***exclusive*** remedy for disputes arising thereunder: a domestic arbitration process, which the parties pursued and which resulted in an award. The submission of the nearly identical dispute to ICSID under the broad terms of the BIT was inappropriate given the exclusive arbitration clause in the relevant contracts. Other ICSID tribunals have held similarly: for example, in *SGS v. Philippines*, which, like this case, involved a concession agreement with an exclusive commercial arbitration clause, the ICSID tribunal held that it "should not exercise its jurisdiction over a contractual claim when the parties have already agreed on how such a claim is to be resolved and have done so exclusively." *See Société Générale de Surveillance S.A. v. Republic of the Philippines*, ICSID Case No. ARB/02/6, Decision on Jurisdiction (Jan. 29, 2004), Bigge Decl. Ex. 8, ¶ 155.

**2. The NextEra Decision is Distinguishable and "Incorrect".**

The Court of Appeals' decision in *NextEra* includes many useful descriptions of the standards for review (discussed above), but its outcome is distinguishable. In that case, the Court of Appeals held that while the existence of an arbitration agreement must be reviewed by a *de novo* under the FSIA, the "scope" of that agreement need not be independently reviewed to establish jurisdiction, but rather can be reviewed on the merits. In *NextEra*, however, there was an agreement to arbitrate under the relevant treaty; the dispute clearly fell within the terms of the treaty's offer to arbitrate. Spain's argument was not that the dispute did not meet the requirements of the treaty's dispute resolution clause, but that the Court of Justice of the European Union had determined that intra-EU investment disputes were not arbitrable, despite the treaty's terms. Having found that there was an offer to arbitrate and that the claimants' submission met that offer, the Court of Appeals found that the question of whether the arbitration

clause could or could not extend to European investors was not jurisdictional under the FSIA, but rather could be addressed with the merits. Here, in contrast, Petitioner's submission to arbitration did not meet the BIT's offer. Because the dispute was outside the offer to arbitrate, there was no arbitration agreement.

In addition, the Court of Appeals held that the relevant agreement to be examined was not between the parties to the dispute, but rather between the two treaty governments. But the Treaty at issue here, including its arbitration clause, is ***not an agreement to arbitrate*** (between the two governments, the disputing parties, or anyone else); rather, the treaty's dispute resolution clause is a standing ***offer*** to arbitrate made to foreign investors, who perfect the agreement to arbitrate by submitting claims that meet the offer's terms.

For this reason, the Court of Appeals' decision in this respect has been expressly rejected by the U.S. government. The United States has consistently asserted that an arbitration clause in an investment treaty is only an offer to arbitrate, that States have not agreed to arbitrate where the terms of the offer to arbitrate are not met, and that the failure to form an agreement to arbitrate deprives an arbitral tribunal of jurisdiction. *See, e.g., BG Group plc v. Republic Argentina*, No. 12-138, Brief for the United States as Amicus Curiae in Support of Vacatur and Remand (Sept. 3, 2013), Bigge Decl. Ex. 9, at 7-8 ("An investment treaty typically sets forth a State's standing offer to arbitrate certain categories of disputes with covered investors…" and outside of the treaty's terms, "there is no arbitration agreement between the State and the investor"); *cf. Medellín v. Texas*, 552 U.S. 491, 513 (2008) ("It is . . . well settled that the United States' interpretation of a treaty is entitled to great weight.") (internal quotation marks and citation omitted). Consistent with these views, in its *amicus curiae* brief filed at the invitation of the Supreme Court in *Kingdom of Spain v. Blasket Renewable Investments LLC*, the Solicitor

General argued that the D.C. Circuit's holding in *NextEra* "is incorrect" insofar as it treated the "scope" of an arbitration agreement as distinct from the antecedent question of whether the investor and the relevant State agreed to arbitrate the dispute at all. Brief for the United States as Amicus Curiae, *Kingdom of Spain v. Blasket Renewable Invs. LLC*, No. 24-1130 (May 26, 2026), Bigge Decl. Ex. 10, at 2.

The Republic joins the Solicitor General in relying on the plain language of the FSIA and the longstanding U.S. interpretation of investment treaty arbitration clauses. The offer to arbitrate in the BIT was just that – an offer. It was not perfected into an agreement to arbitrate by the Petitioner, because the dispute Petitioner proposed to arbitrate fell outside of the offer. Therefore, this Court lacks jurisdiction under the FSIA's agreement to arbitrate exception. Proceeding to the merits of the Petition and punting on the "scope" of the Republic's offer to arbitrate without first conclusively resolving whether this Court has jurisdiction – whether there was an agreement to arbitrate – would contravene the express terms of the FSIA.

**3. The Republic Did Not Impliedly Waive Its Sovereign Immunity.**

Petitioner also invokes the FSIA's implied-waiver exception, 28 U.S.C. § 1605(a)(1). This Circuit construes the implied-waiver provision narrowly, *see Creighton Ltd. v. Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999), and has identified "only three circumstances" in which a sovereign will have impliedly waived its immunity: (1) executing a contract with a choice of law clause designating U.S. law; (2) filing a responsive pleading without asserting sovereign immunity; or (3) agreeing to submit a dispute to arbitration in the United States. *TIG Insurance Company v. Republic of Argentina*, 110 F.4th 221, 236 (D.C. Cir. 2024), *citing Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021). None of the three circumstances applies here, and Petitioner has not pled otherwise.

Petitioner claims instead that the Republic impliedly waived its sovereign immunity "by agreeing to arbitrate this dispute." Petition ¶ 7. This assertion ignores the requirement that such an agreement to arbitrate also include an agreement to arbitration ***in the United States***. In any event, this supposed basis of jurisdiction is redundant with Petitioner's "agreement to arbitrate" assertion; as there was no agreement to arbitrate in this case, for the reasons discussed above, there was also no "implied waiver" under the terms set by the Petitioner.[2]

### C. In the Alternative, This Action Should Be Stayed Pending Conclusion of the ICSID Annulment Proceeding.

The ICSID *ad hoc* Annulment Committee is currently reviewing whether the Tribunal manifestly exceeded its power by finding jurisdiction where there was none (among other bases for annulment). This Court must make its own determination as to whether there was an arbitration agreement, and is bound neither by the Tribunal's determination nor the Annulment Committee's review. Nonetheless, as an alternative to dismissing the case outright (as the Court should do), the Court can stay proceedings pending the outcome of the annulment process. In *InfraRed Environmental v. Kingdom of Spain*, No. 20-817 (JDB), 2021 WL 2665406 (D.D.C. June 29, 2021), this Court did just that, staying an ICSID-award enforcement proceeding against the Kingdom of Spain pending the outcome of a parallel ICSID annulment proceeding. Indeed, the Court in *InfraRed* indicated that it was "join[ing] the consensus of other judges in this

---

[2] To the extent that the Petitioner may argue that the Republic impliedly waived its sovereign immunity by becoming a party to the ICSID Convention, this argument would likewise fail. The Court of Appeals has expressly stated that whether a sovereign waives its immunity by signing the ICSID Convention is "unsettled" in this Circuit, and that it has not "adopted" the decisions in the Second Circuit that have found such a waiver. *NextEra*, 112 F.4th at 1099. In any event, the waiver extends only to suits to enforce awards falling within the Convention's jurisdictional framework – that is, awards rendered pursuant to a valid agreement to submit the dispute to ICSID arbitration. It would be absurd to argue that, there being no agreement to arbitrate under the ICSID Convention, the implied waiver nonetheless requires enforcement of an errant ICSID award.

District to face similar claims and stay the proceedings until the ICSID Annulment Committee has made its final determination." *Id.* at *1. There is no reason to depart from that consensus in this case, particularly where the Republic has asserted multiple bases for annulment, any one of which would moot the Petition.

Federal courts have inherent authority to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). Courts in this circuit have adopted a variety of tests in determining whether to exercise this authority, but typically consider the length of the stay; issues of judicial economy (including whether the independent proceeding will decide an issue dispositive to the stayed case and how likely it is that the issue will be decided); the "balance of hardships," including whether the plaintiff may suffer harm as a result of the stay, and "considerations of comity." *See Vallejo Entertainment LLC v. Small Business Administration*, No. 1:22-cv-01548 (RCL), 2023 WL 3275634 (D.D.C. May 5, 2023) at *1-3; *InfraRed*, 2021 WL 2665406 at *4-6.

Each factor favors a stay here. *First,* the length of the stay would be limited to the time it takes for the Annulment Committee to render its decision. The hearing on annulment occurred in early June 2026. While the Republic cannot predict how long it will take for the Annulment Committee to decide the application, the Court can take judicial notice that between 2016 and 2024, of the 73 annulment decisions issued by ICSID committees, 54 were rendered within one year of a hearing, with an average of nine months. *See* ICSID, Updated Background Paper on Annulment (March 2024), Bigge Decl. Ex. 11, ¶ 67.

*Second*, judicial economy strongly favors a stay. The Annulment Committee will decide the dispositive issue in this motion, namely whether the underlying arbitral tribunal had

jurisdiction to hear the case in the first place. Should the Annulment Committee find, as the Republic anticipates, that there was no arbitration agreement between the Parties, then there will be no award for this Court to enforce, and even if there were, the Court would lack jurisdiction to enforce it under the FSIA. While the Annulment Committee is seized, it would be highly uneconomical for this Court to examine the very same question regarding the purported arbitration agreement. Regardless of the outcome of the annulment proceedings, "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or the parties' best interests." *CEF Energia, B.V. v. Italian Republic*, No. 19-cv-3443 (KBJ), 2020 WL 4219786 * 5 (D.D.C. July 23, 2020) (internal quotation marks and citation omitted). The Annulment Committee is likewise considering several other bases for annulment; if the Committee finds for the Republic on any one of these issues, the Award will be vacated and this enforcement proceeding will be moot.

*Third*, the balance of hardships favors a stay. If the stay is not granted, the Parties will first address the Republic's Motion to Dismiss, and then (if the case is not dismissed) will move to the merits of the Petition. If the Petition is granted, Petitioner will likely proceed as quickly as possible to efforts to attach and/or execute against the Republic's assets. All of these proceedings will require the Republic to incur significant costs and expend considerable effort. A brief stay pending the decision of the Annulment Committee, on the other hand, will not significantly harm Petitioner; should Petitioner prevail in the annulment proceedings and in its Petition before this Court, the Award includes provisions for post-Award interest.

Finally, considerations of comity weigh in favor of a stay. ICSID is a closed system, by which its decisions can only be annulled through the process provided by the ICSID Convention. National courts' role in this system is limited to recognition and enforcement of awards. Given

the number of concerns the Republic has raised in the application for annulment – which extend far beyond the issues discussed in this memorandum – this Court should defer to the ICSID Annulment Committee to let it rule meaningfully on the Republic's application.

**PRESERVED BASES FOR DISMISSAL**

The Republic expressly preserves an objection under Fed. R. Civ. P. 12(b)(6). For the same reasons that this Court lacks personal and subject matter jurisdiction, the Petition likewise fails to state a claim upon which relief can be granted, and can be dismissed on that basis. The Republic likewise reserves all objections to the sufficiency of service.

**CONCLUSION**

For the foregoing reasons, Respondent the Republic of Colombia respectfully requests that this Court:

(a) Dismiss the Petition for lack of personal and subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq*., and deny all of Petitioner's requested relief;

(b) In the alternative, stay this action pending completion of the ICSID annulment proceeding in *Telefónica, S.A. v. Republic of Colombia*, ICSID Case No. ARB/18/3; and

(c) Grant Colombia its attorneys' fees and such other and further relief as this Court may deem just and proper.

The Republic reserves all rights and defenses and does not waive its sovereign immunity by the filing of this Motion or any responsive pleading.

Dated: September 8, 2026

Respectfully submitted,

WORDSTONE DISPUTE RESOLUTION US LLP

By: /s/ David M. Bigge

David M. Bigge
D.C. Bar No. 994194
1320 19th Street, NW
Suite 600
Washington, D.C. 20036
Tel.: +1 202 902 1801
Email: David.Bigge@wordstone.com

*Attorneys for Respondent*
*Republic of Colombia*