**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TELEFÓNICA, S.A.,**<br>**Petitioner,**<br>**v.**<br>**REPUBLIC OF COLOMBIA,**<br>**Respondent.** | **Civ. A. No. 26-1930 (JDB)** |

**MEMORANDUM OPINION AND ORDER**

Petitioner Telefónica, S.A. ("Telefonica"), a company incorporated under the laws of the Kingdom of Spain ("Spain"), brings this action to enforce an arbitral award issued to it by the International Centre for Settlement of Investment Disputes ("ICSID") against the Republic of Colombia ("Colombia"). Colombia moved to dismiss the action for lack of subject-matter and personal jurisdiction, or in the alternative to stay the proceedings until its application to annul the arbitral award is resolved by the ICSID ad hoc Annulment Committee currently reviewing the award's validity. Telefonica cross-moved for judgment on the pleadings, or in the alternative for summary judgment. Consistent with the reasoning of many judges in this district deciding similar cases, this Court will stay these proceedings until the ICSID Annulment Committee has made its final determination.

**BACKGROUND**

**I. The ICSID Convention and the Bilateral Investment Treaty**

Spain, Colombia, and the United States are all contracting parties to the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States, a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d

96, 100 (2d Cir. 2017); Database of ICSID Member States, ICSID, https://icsid.worldbank.org/about/member-states/database-of-member-states (2026). "The Convention established … the [ICSID] … under whose authority arbitration panels may be convened to adjudicate disputes between international investors and host governments in Contracting States." Mobil Cerro Negro, 863 F.3d at 101 (citation modified).

In 2005, Spain and Colombia entered into a separate bilateral investment treaty ("BIT")—the Agreement Between the Kingdom of Spain and the Republic of Colombia on the Reciprocal Promotion and Protection of Investments. BIT [ECF No. 1-3]. Under Article 2, Section 3 of the BIT, Colombia and Spain are required to "accord 'fair and equitable treatment' to investments made by investors of the other Contracting Party." Telefonica Opp'n [ECF No. 8-1] at 3 (quoting BIT Art. 2(3)). The treaty provides that disputes "arising between one of the Contracting Parties and an investor of the other Contracting Party, regarding matters governed by [the] Agreement," may be submitted to arbitration before the ICSID. BIT Art. 10.

## II. The Underlying Dispute Between Telefonica and Colombia

On March 28, 1994, the Colombian Ministry of Communications, now called the Ministry of Information and Communications Technologies ("MinTIC"), entered into three Concession Contracts with Colombia Telecomunicaciones S.A. E.S.P. ("ColTel") for "the provision of mobile cellular telephone services." Pet. [ECF No. 1] ¶ 12. In 2004, Telefonica, a Spanish company, acquired a 67.5% interest in ColTel. Telefonica Opp'n at 4; Colombia Mot. to Dismiss [ECF No. 6] at 2–3.

Clause 33 of the Concession Contracts provided that "[u]pon expiration of the concession term, the elements and assets directly related to the concession shall become the property of [Colombia] without … being required to pay any compensation." Concession Contract [ECF No.

6-3] at 122. In 1998, Colombia passed Law 422, which clarified that "upon expiration of telecommunications concession contracts, only the radioelectric spectrum would revert to the State, and not the other [concession] assets." Pet. ¶ 13.[1] But in 2013, the Colombian Constitutional Court "declared unconstitutional the application of [Law 422] to concession contracts" signed before January 13, 1998. Pet. ¶ 14; see Judgment C-555 [ECF No. 6-6].

When the Concession Contracts between ColTel and MinTIC expired in 2014, a dispute arose regarding what assets ColTel was required to revert to Colombia: MinTIC insisted on full reversion of all ColTel's assets, but ColTel maintained it would provide MinTIC with only the radioelectric spectrum. Pet. ¶¶ 14–15; Colombia Mot. to Dismiss at 5. In 2016, after failed negotiation attempts between the two parties, MinTIC initiated domestic arbitration against ColTel. Pet. ¶¶ 14–15.[2] On July 25, 2017, the domestic tribunal sided with MinTIC and ordered ColTel to pay approximately $547 million USD, the value of all ColTel's assets related to the Concession Contracts. Pet. ¶ 16. Telefonica was "compelled to capitalize ColTel in order to enable ColTel to pay the Domestic Award," for a total amount of US $379,804,275.55 (corresponding to its 67.5% ownership interest). Id. ¶ 17.

## III. The ICSID Arbitration

In 2018, after the domestic arbitration award was issued, Telefonica initiated arbitration against Colombia with the ICSID, arguing that the Colombian government "violated the BIT's fair and equitable treatment standard" "by frustrating Telefonica's legitimate expectations regarding the scope of asset reversion." Telefonica Opp'n at 7. In 2024, an ICSID tribunal found for

---

[1] Article 68(4) of Law 1341, which Colombia passed in 2009, subsequently confirmed that reversion applies only to the radio spectrum. Pet. ¶13; ICSID Arbitral Award [ECF No. 1-2] ¶ 207. Together, the two laws are referred to as the "Reversion Clarification." Pet. ¶13.

[2] Clause 43 of Concession Contracts provided that "[a]ny disputes relating to the … termination of this contract … that cannot be resolved directly by the parties shall be submitted to an arbitration tribunal for resolution." Concession Contract at 123.

Telefonica and awarded it the full amount it had previously paid Colombia under the local arbitration, plus interest and attorneys' fees. Pet. ¶ 24.

Colombia thereafter filed an application to annul the award pursuant to Article 52 of the ICSID Convention, arguing that Colombia and Telefonica did not agree to arbitrate and that the ICSID tribunal lacked jurisdiction over the dispute. Id. ¶ 26; Colombia Mot. to Dismiss at 8–9. An ad hoc Annulment Committee was constituted on March 14, 2025. Colombia Mot. to Dismiss at 9. On January 9, 2026, the Committee stayed enforcement of the ICSID arbitration award for the pendency of the annulment proceedings, conditional on Colombia posting an irrevocable bank guarantee. Pet. ¶ 26. Colombia did not post the guarantee by the required deadline, and the stay was lifted on April 4. Id. The Committee has since held a hearing on Colombia's annulment application and received post-hearing briefs from the parties, but it has not yet issued a decision. Colombia Mot. to Dismiss at 10; Telefonica Opp'n at 9.[3]

On June 2, Telefonica filed a petition in this Court seeking recognition and enforcement of the ICSID's arbitration award. Pet. at 10–11. Colombia moved to dismiss Telefonica's petition for lack of subject-matter and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), or in the alternative to stay the proceedings pending conclusion of the ICSID annulment proceedings. Colombia Mot. to Dismiss. Telefonica cross-moved for judgment on the pleadings, or in the alternative for summary judgment. Telefonica Cross-Mot. [ECF No. 8]. The dispute is fully briefed and ripe for review.

## ANALYSIS

[3] The hearing took place June 3–4, 2026, and the briefs were submitted August 4, 2026. Colombia Mot. to Dismiss at 10; Telefonica Opp'n at 9.

For the following reasons, the Court will grant Colombia's motion to stay pending resolution of the ICSID annulment proceedings and deny, without prejudice, both its motion to dismiss and Telefonica's cross-motion for judgment on the pleadings or summary judgment.

## I. Order of Analysis

In its motion to dismiss, Colombia argues that this Court does not have subject-matter jurisdiction to enforce the arbitration award under the FSIA. Colombia Mot. to Dismiss at 12–17. Courts have "'an independent obligation to determine whether subject-matter jurisdiction exists' before addressing the merits of a dispute." InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain, Civ. A. No. 20-817, 2021 WL 2665406, at *3 (D.D.C. June 29, 2021) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)). But certain threshold, "non-merits … issues may be addressed" before jurisdiction, Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007), including "[t]he stay of a petition to enforce an arbitration award," Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain, 397 F. Supp. 3d 34, 38 (D.D.C. 2019). The Court will therefore address Colombia's motion to stay before addressing jurisdiction or the merits of the parties' dispute.

## II. Motion to Stay

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." LLC SPC Stileks v. Republic of Moldova, 985 F.3d 871, 880 (D.C. Cir. 2021). To determine whether to stay proceedings, "courts generally 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'" Masdar Solar, 397 F. Supp. at 39 (citing Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012)) (citation modified). "Those interests must be considered in the light of the particular circumstances of the case." NJSC Naftogaz of Ukraine v.

Russian Federation, Civ. A. No 23-1828, 2026 WL 2069990, at *3 (D.D.C. July 17, 2026) (citation modified). In the context of "a motion to stay enforcement of an arbitral award pending the outcome of a foreign proceeding," there are "unique" balancing considerations. Masdar Solar, 397 F. Supp. at 39. "On the one hand, such a motion may implicate federal courts' obligations under international treaties to promptly recognize these awards, but on the other hand, premature enforcement risks conflicting results and a consequent offense to international comity." Id. (citation modified). Ultimately, the burden is on the moving party to "show[] that the stay is needed and warranted." Cube Infrastructure Fund SICAV v. Kingdom of Spain, Civ. A. No. 20-1708, 2021 WL 7447978, at *2 (D.D.C. May 17, 2021).

The Court understands Telefonica's interest in moving forward with this litigation after spending eight years navigating the ICSID arbitration process. But the Court concludes, consistent with the reasoning of many other judges in this district, that a stay is warranted under the circumstances. First, judicial economy favors staying the case. An annulment proceeding regarding the very arbitration award at issue in this action is currently pending before the ICSID Annulment Committee. See Colombia Mot. to Dismiss at 10; Telefonica Opp'n at 9. The issues raised in the ICSID annulment proceeding and this action are nearly identical: central to the resolution of both actions is whether there was an arbitration agreement between Telefonica and Colombia, and relatedly whether the ICSID tribunal had jurisdiction to hear the case. Colombia Mot. to Dismiss at 18–19.

"Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." InfraRed, 2021 WL 2665406, at *5. For one, there is the possibility of inconsistent results. See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, Civ. A. No. 19-01618, 2020 WL 5816238, at *2 (D.D.C. Sept. 30, 2020). If

the ICSID Annulment Committee were to set aside the arbitration award, the award would "not [be] enforceable," and would "therefore … not [be] entitled to full faith and credit in this Court." InfraRed, 2021 WL 2665406, at *4. "Although a stay would immediately delay the resolution of the parties' dispute, it would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the ICSID were to then set it aside." Masdar, 397 F. Supp. 3d at 39 (citation modified). Telefonica points out that it is unlikely the Annulment Committee will set aside the award. Telefonica Opp'n at 27. But even if it does not, "the outcome of the proceedings"—for example, the Committee's resolution of the jurisdictional question—may nevertheless "affect this Court's determinations … by virtue of their persuasive value." Masdar, 397 F. Supp. 3d at 40 (citation modified). Only a stay will "permit" this Court to "consider[] … the grounds for [the ICSID Annulment Committee's] decision" before making its own determination. Unión Fenosa Gas, S.A. v. Arab Republic of Egypt, Civ. A. No. 18-2395, 2020 WL 2996085, at *4 (D.D.C. June 4, 2020).

The balance of hardships in this case also favors a stay. On the one hand, if the enforcement action proceeds and this Court determines that it has subject-matter jurisdiction, Colombia "will undeniably be burdened by having to attack the validity of the arbitral award in two forums, and perhaps in ultimately having to recover assets seized during this action should the annulment proceeding go its way." Masdar, 397 F. Supp. 3d at 40. On the other hand, if the case is stayed, Telefonica will have to endure some delay. But the Court is hopeful that the ICSID proceedings are "quite near the finish line." Unión Fenosa Gas, 2020 WL 2996085, at *5. On June 3 and 4, the Annulment Committee held a hearing. Colombia Mot. to Dismiss at 10; Telefonica Opp'n at 9. Of the 73 ICSID annulment decisions issued from mid-April 2016 through 2023, the average time between the Annulment Committee holding a hearing and the issuance of a decision was nine

months. ICSID Background Paper [ECF No. 6-13] at 28–29. Because five months have already passed since the hearing was held, it is likely that the proceedings will conclude in a matter of months. And "if [Telefonica] ultimately prevail[s] [it] will likely be compensated for any delay because the award includes interest." Cube Infrastructure Fund, 2021 WL 7447978, at *3 (citation modified).

When discussing the prejudice of delaying the proceedings, Telefonica relies heavily on the fact that the ICSID arbitration proceedings have been ongoing for over eight years. See Telefonica's Opp'n at 24, 26. In so doing, Telefonica cites many cases decided "under a different arbitral framework—the New York Convention." Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan, 590 F. Supp. 3d 262, 272 (D.D.C. 2022). In the context of the New York Convention, the D.C. Circuit has held that district courts must weigh two factors first articulated in Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317–18 (2d Cir. 1998), when making a stay determination: "(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation"; and "(2) the status of the foreign proceedings and the estimated time for those proceedings" to resolve. Tethyan, 590 F. Supp. 3d at 272 (citing Stileks, 985 F.3d at 879–80). When applying the first Europcar factor, courts consider how long ago the underlying arbitration proceedings were initiated. See, e.g., Enka Renewables, LLC v. Georgia, Civ. A. No. 25-00125, 2026 WL 2676739, at *2 (D.D.C. Sept. 11, 2026).

The D.C. Circuit adopted these two factors based on the goals of the New York Convention, Stileks, 985 F.3d at 880, "a different and accordingly nonbinding context," Tethyan, 590 F. Supp. 3d at 272. In the ICSID context, judges have not put as much emphasis on the length of the underlying arbitration proceedings when deciding whether to stay a case. See InfraRed, 2021 WL 2665406, at *2, 7 (staying proceeding despite underlying arbitration proceedings going on for 7

years); see also Unión Fenosa Gas, 2020 WL 2996085, at *2, 5 (staying proceeding despite 6-year underlying arbitration proceedings and stating that "complaints about delay would be better aimed at the ICSID itself, which has generated no dearth of criticism in recent years for its 'drawn-out' arbitrations").[4] But even applying the first two Europcar factors, a stay is warranted in this case given the likelihood that the annulment proceeding will resolve expeditiously. Compare Stileks, 985 F.3d at 880 (denying stay because arbitration proceeding was filed 10 years ago and "failing to lift the stay might have forced [petitioner] to sit on its award for several additional years"), with Stati v. Republic of Kazakhstan, 199 F. Supp. 3d 179, 183, 193 (D.D.C. 2016) (granting stay where arbitration was initiated 6 years prior because "a decision by the Swedish court [was] expected in the coming months").

The Court is also not convinced by Telefonica's arguments that it will face additional hardship beyond that inherent in withstanding delay. According to Telefonica, multiple creditors are competing for Colombia's assets and multiple arbitrations are pending against Colombia, so a stay will increase the risk that Colombia will fail to pay the arbitration award. Telefonica Opp'n at 27–29. To support its concern about non-payment, Telefonica cites public statements by Colombia's previous president, Gustavo Petro, denouncing the ICSID system and discussing the country's financial situation. Id. at 28–29. But Telefonica's concern is wholly speculative. For

---

[4] This difference in treatment may stem from differences in the text and purpose of the two treaties. The "primary goal" of the New York Convention is "to facilitate the recognition and enforcement of arbitral awards," Europcar, 156 F.3d at 318, "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought," New York Convention Art. 1(1). Courts consistently cite this goal when they apply the first two Europcar factors. See Europcar, 156 F.3d at 318 ("Because the primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors on the list should weigh more heavily in the district court's determination."); Stileks, 985 F.3d at 880 ("We think [the first two Europcar] factors directly implicate the court's responsibility to balance the Convention's policy favoring confirmation of arbitral awards against the principle of international comity embraced by the Convention." (citation modified)). In contrast, the ICSID Convention creates the arbitral framework through which investment disputes are heard and then further provides that a contracting state "shall … enforce the pecuniary obligations imposed" by the ICSID tribunal. ICSID Convention Art. 54(1). Courts may be less willing to delay proceedings brought under a convention that aims primarily to facilitate award enforcement and that does not create a drawn-out arbitral process.

one, Petro is no longer the president of Colombia, and Colombia remains a party to the ICSID. See U.S. Dep't State, A New Era in U.S. Colombia Relations, https://www.state.gov/releases/office-of-the-spokesman/2026/08/a-new-era-in-u-s-colombia-relations/ (Aug. 7, 2026); Database of ICSID Member States, ICSID, https://icsid.worldbank.org/about/member-states/database-of-member-states (2026). Moreover, Telefonica does not cite any authority demonstrating that a stay will significantly alter the order in which Colombia satisfies its awards, nor does it present any language from Colombia saying that it will not or cannot pay if this Court enforces Telefonica's arbitration award. Courts would have little room to stay arbitration enforcement actions if stays were routinely denied every time a foreign country owed other debts and lamented its financial condition.

Telefonica's argument that this Court should deny a stay because the ICSID Annulment Committee lifted its own stay on enforcement is also mistaken. District courts have "inherent authority to stay cases," which is not "limited by the ICSID's determination to lift [a] stay." NextEra Energy, 2020 WL 5816238, at *3. Numerous judges in this district have therefore stayed proceedings notwithstanding the ICSID lifting its stay on enforcement. See InfraRed, 2021 WL 2665406, at *6; Unión Fenosa Gas, 2020 WL 2996085, at *5; Min. Order, Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain, Civ. A. No. 18-01753 (D.D.C. July 15, 2020); see also Cube Infrastructure Fund, 2021 WL 7447978, at *4 ("[E]ven in cases where the ICSID lifted its own provisional stay of enforcement … courts in this District have found that a stay of the action remained appropriate."). In fact, "ICSID's lifting of its stay also mitigates any prejudice to [Telefonica] because [it is] now free to seek enforcement of the award during the pendency of the annulment proceedings, albeit without the involvement of this Court." InfraRed, 2021 WL 2665406, at *6.

In sum, after weighing the competing interests, and consistent with the decisions of many other judges in this district,[5] the Court concludes that a stay of the arbitration enforcement action is warranted pending the resolution of the ICSID annulment proceeding. But the Court "does not wish to unduly delay these proceedings." Masdar, 397 F. Supp. 3d at 40. Accordingly, the Court will require the parties to provide periodic updates regarding the progress of the annulment proceedings and will continue to evaluate the fairness of the stay in light of these updates. If it seems like the annulment proceedings are dragging on, the Court may lift its stay.

Finally, the Court will not grant Telefonica's request to condition the stay on Colombia posting a bond. Telefonica Opp'n at 29. "Ordering [Colombia] to provide a bond to secure the ICSID award as though it were a judgment of this Court would undermine the Court's decision not to rule on the validity of the ICSID award, as it would assume its validity." InfraRed, 2021 WL 2665406, at *6. And Telefonica "ha[s] not identified any provisions of the ICSID Convention or relevant U.S. federal cases that support [its] position" that a bond is warranted. Id.

* * *

Upon consideration of [6] Colombia's motion to dismiss or in the alternative to stay the proceedings, [8] Telefonica's cross-motion for judgment on the pleadings or in the alternative summary judgment, and the entire record herein, it is hereby

---

[5] See, e.g., Masdar, 397 F. Supp. 3d at 41 (granting stay pending resolution of ICSID annulment proceedings); InfraRed, 2021 WL 2665406, at *7 (same); 9REN Holding S.A.R.L. v. Kingdom of Spain, Civ. A. No. 19-01871, 2020 WL 5816012, at *3 (D.D.C. Sept. 30, 2020) (same); Cube Infrastructure Fund, 2021 WL 7447978, at *4 (same); Unión Fenosa Gas, 2020 WL 2996085, at *5 (same); RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain, Civ. A. No. 19-cv-03783, 2021 WL 1226714, at *1 (D.D.C. Mar. 31, 2021) (same); Hydro Energy 1, S.a.r.l. v. Kingdom of Spain, Civ. A. No. 21-2463, 2022 WL 2315519, at *1 (D.D.C. June 28, 2022) (same); NextEra Energy, 2020 WL 5816238, at *3 (same); Min. Order, Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain, Civ. A. No. 18-cv-01753 (D.D.C. July 15, 2020) (same); but see Tethyan, 590 F. Supp. 3d at 272 (denying stay notwithstanding ongoing ICSID annulment proceedings).

**ORDERED** that respondent's motion to stay the proceedings is **GRANTED** and further proceedings in this matter are **STAYED** pending the ICSID Annulment Committee's final decision on the merits; it is further

**ORDERED** that respondent's motion to dismiss the complaint is **DENIED WITHOUT PREJUDICE**; it is further

**ORDERED** that petitioner's motion for judgment on the pleadings or summary judgment is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the parties shall submit a joint status report on the progress of proceedings before the ICSID Annulment Committee by not later than January 15, 2027.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: November 18, 2026